UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**EYLUL REFIDE SIMSEK, on behalf of herself and all others similarly situated,**

     **Plaintiffs,**

   -against-

**NEW YORK STATE CATHOLIC HEALTH PLAN, INC. d/b/a FIDELIS CARE NEW YORK, MARK LANE, and PATRICK FRAWLEY,**

     **Defendants.**

---

**11 CIV. 5393 (FB)(JMA)**

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE
SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS
COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT
AND CLASS ACTION SETTLEMENT PROCEDURE**

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the putative class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL BACKGROUND.............................................................................................. 1

I.      THE PARTIES ................................................................................................................. 1

II.     COMMENCEMENT OF LITIGATION ........................................................................ 1

III.    PROPOSED MOTIONS AND AMENDED PLEADINGS ............................................ 2

IV.     DISCOVERY AND MEDIATION ................................................................................. 3

V.      CONTINUED SETTLEMENT DISCUSSIONS............................................................ 5

SUMMARY OF THE SETTLEMENT TERMS ........................................................................ 5

I.      THE SETTLEMENT FUND ........................................................................................... 5

II.     RELEASE ........................................................................................................................ 6

III.    ELIGIBLE EMPLOYEES .............................................................................................. 6

IV.     ALLOCATION FORMULA ........................................................................................... 6

V.      ATTORNEYS' FEES AND LITIGATION COSTS ...................................................... 7

CLASS ACTION SETTLEMENT PROCEDURE ..................................................................... 7

ARGUMENT ............................................................................................................................... 8

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................ 8

        A.      The Settlement Is Fair, Reasonable, And Adequate ............................................. 10

                1.      Litigation Through Trial Would Be Complex, Costly, And Long
                        (*Grinnell* Factor 1) ..................................................................................... 11

                2.      The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2) ......... 11

                3.      Discovery Has Advanced Far Enough To Allow The Parties To
                        Responsibly Resolve The Case (*Grinnell* Factor 3)................................... 12

4. Plaintiff Would Face Real Risks If The Case Proceeded (Grinnell Factors 4 And 5) ........................................ 13

5. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ................................ 14

6. Defendants' Ability to Withstand a Greater Judgment Is Not Assured (*Grinnell* Factor 7) .................................... 14

7. The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9) .......... 15

II. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ........................................................ 16

A. Numerosity ........................................................ 17

B. Commonality ...................................................... 18

C. Typicality ........................................................... 19

D. Adequacy Of The Named Plaintiff ............................ 19

E. Certification Is Proper Under Rule 23(b)(3) ................. 20

1. Common Questions Predominate ......................... 20

2. A Class Action Is A Superior Mechanism ............... 21

III. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 22

IV. THE PROPOSED CLASS NOTICE IS APPROPRIATE ................ 23

V. PLAINTIFF WILL SEEK APPROVAL OF THE FLSA SETTLEMENT ...... 24

CONCLUSION ........................................................ 25

## TABLE OF AUTHORITIES

**Cases**........................................................................................**Page Number**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 20

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)...................................24

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......... *passim*

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024 (CPS), 1990 WL 73423 (E.D.N.Y. May 22, 1990)......................................15

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)...............................................................12

*Christopher v. Smithkline Beecham Corporation*, 132 S.Ct. 2156 (2012)...................................4, 13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)...............................................*passim*

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................19

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001)....................................................... 18

*In re Drexel Burnham Lambert Grp.*, 960 F.2d 285 (2d Cir. 1992)..................................................19

*Dziennik v. Sealift, Inc.*,
    No. 05 Civ. 4659 (DLI)(MDG), 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ..........................20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240 (CM) *et al*, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................10

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)............................................. *passim*

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...............................................................................................16-17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................ 18

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...............................7, 16

*Girault v. Supersol 661 Amsterdam, LLC*,
    No. 11 Civ. 6835 (PAE), 2012 WL 2458172 (S.D.N.Y. June 28, 2012)............................. 9, 23, 24

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)........................................................10

*Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353 (E.D.N.Y. 2009) ........................................................17

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ...................................................................... 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................... 22

*In re Ira Haupt & Co.*, 304 F.Supp. 917 (S.D.N.Y. 1969) .............................................................13

*Jankowski v. Castaldi*,
  No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006)........................... 21

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) ...................... 18

*Karic v. Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011).......................23

*Lovaglio v. W & E Hospitality Inc.*,
  No. 10 CIV 7351 (LLS), 2012 WL 1890381 (S.D.N.Y. Mar. 12, 2012)..................... 9-10, 23, 24

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 11

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)..............................................................17, 18, 19

*Marisol A. v. Giuliani*, 185 F.R.D. 152 (S.D.N.Y. 1999) ............................................................13

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ..................................................12, 20

*Matheson v. T-Bone Restaurant, LLC*,
  No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ................... 22, 23, 24

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ................................. 9

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)................................................... 20

*McKenna v. Champion Intern. Corp.*, 747 F.2d 1211 (8th Cir. 1984) ..........................................25

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010).................................. 25

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................. 7

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)........................................................................... 16

*O'Dell v. AMF Bowling Ctrs., Inc.*,
  No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009) ..................... 20, 23, 24

*Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011) ...........................................12, 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................... 15

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ........................................13

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ............................................. 8

*Penney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)....................................................... 19-20

*In re Penthouse Executive Club Comp. Litig.*,
  No. 10 Civ. 1145 (KMW), 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ............................... 13

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D 200 (S.D.N.Y. 1995)..................... 8-9

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...........................................................................19

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) .................................................... 21

*Ryan v. Volume Services America, Inc.*,
  No. 652970/2012 (MLS), 2012 N.Y. Misc. LEXIS 932 (N.Y.Sup.Ct. Mar. 7, 2013) ............. 23

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561 (S.D.N.Y. 2012)..........................................23

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ......................... 17

*Spencer v. No Parking Today, Inc.*,
  No. 12 Civ. 6323 (ALC)(AJP), 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) ........... 17, 18, 19, 21

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
  No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................... 16

*Toure v. Cent. Parking Sys. of N.Y.*,
  No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).................................19

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) ................................................................. 9

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698 (SAS)(KNF),  2005 WL 106895 (S.D.N.Y. Jan. 19, 2005) ..................... 21-22

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698 (SAS)(KNF),  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................... 13

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ....................................... 8, 9

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).................................................12

*Yuzary v. HSBC Bank USA, N.A.*,
  No. 12 Civ. 3693 (PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ..................... 9, 10, 13

**Statutes**.................................................................................................**Page Number**

Fair Labor Standards Act ("FLSA"). ...................................................... *passim*

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(a)(1) ..................... 17

Fed. R. Civ. P. 23(a)(2) .................................................................. 17, 18

Fed. R. Civ. P. 23(a)(3) .................................................................. 17, 19

Fed. R. Civ. P. 23(a)(4) .............................................................. 17, 19, 20

Fed. R. Civ. P. 23(b)(3)..........................................................17, 20, 21, 22

Fed. R. Civ. P. 23(c) ...................................................................... 23, 24

Fed. R. Civ. P. 23(e) ............................................................................ 7

Fed. R. Civ. P. 23(g) ........................................................................... 22

Fed. R. Civ. P. 23(h) ............................................................................ 7

Fed. R. Civ. P. 54(d)(2) ........................................................................ 7

New York Labor Law ("NYLL"). ............................................................ *passim*


**Additional Authorities**........................................................**Page Number**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)..........................7, 9, 16

*Manual for Complex Litigation (Third)* (1995)................................................................9

## INTRODUCTION

Subject to Court approval, Plaintiff Eylul Refide Simsek ("Plaintiff") – an hourly employee of Fidelis Care New York ("Fidelis") – has settled this wage and hour putative class and collective action for Seven Hundred Thousand Dollars ($700,000). The proposed settlement resolves Plaintiff's claims on a class-wide basis and satisfies all of the criteria for preliminary settlement approval under federal law.

With this motion, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit A** to the Declaration of Brian S. Schaffer ("Schaffer Decl.")[1]; (2) for settlement purposes, conditionally certify the settlement class under Fed. R. Civ. P. 23; (3) appoint Fitapelli & Schaffer, LLP as class counsel; and (4) approve the Notice of Proposed Class Action Settlement ("Settlement Notice"), attached as **Exhibit B** to the Schaffer Decl., and direct its distribution.

## PROCEDURAL BACKGROUND

### I.       THE PARTIES

Plaintiff is an hourly Retention Field Representative ("RFR") at Fidelis in New York. Fidelis is a health insurance provider offering government based health insurance to children and adults, with offices located throughout New York State. At all times relevant, Fidelis has been owned, operated and controlled by Defendants New York State Catholic Health Plan, Inc., Mark Lane, and Patrick Frawley (collectively, "Defendants").

### II.      COMMENCEMENT OF THE LITIGATION

On November 3, 2011, Plaintiff commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *See*

---

[1]       Unless otherwise indicated, all exhibits are attached to the Schaffer Decl.

Schaffer Decl. ¶ 4.  Specifically, Plaintiff alleged that Defendants violated the FLSA and the NYLL by unlawfully depriving Plaintiff and similarly situated RFRs of premium overtime compensation and gap time wages (for hours 37.5 to 40) when they worked in excess of 40 hours per workweek, and spread-of-hours pay when the length of their workdays was greater than 10 hours.  *See* Id.

On December 15, 2011, Defendant New York State Catholic Health Plan, Inc. filed its Answer to Plaintiff's Complaint, denying the material allegations.  *See* Id. ¶ 5.

## III.      PROPOSED MOTIONS AND AMENDED PLEADINGS

Also on December 15, 2011, defense counsel requested permission to move pursuant to Fed. R. Civ. P. 12(b)(6) for an Order dismissing Defendants Mark Lane and Patrick Frawley (the "Individual Defendants") from the lawsuit.  *See* Id. ¶ 6.  According to defense counsel's letter, Plaintiff's allegations could not establish that the Individual Defendants were personally liable as "employers" under the FLSA and NYLL.  *See* Id.  On December 19, 2011, Plaintiff requested a pre-motion conference to discuss her anticipated motion seeking collective action certification of her FLSA claims pursuant to 29 U.S.C. § 216(b) ("216(b) motion").  *See* Id. ¶ 7.  As stated in Plaintiff's letter to the Court, collective action certification was appropriate given that Defendants subjected Plaintiff and her similarly situated coworkers to the same unlawful compensation policies, by denying them gap-time wages and premium overtime compensation when they worked over 40 hours per workweek.  *See* Id.  Thereafter, a pre-motion conference was held on March 8, 2012 to discuss the parties' proposed motions.  *See* Id ¶ 8.

Plaintiff filed an Amended Complaint on March 8, 2012.  *See* Id. ¶ 9.  The Amended Complaint asserted additional facts regarding the Individual Defendants' roles as Plaintiff's employers under the FLSA and NYLL, and claimed that Defendants further violated the NYLL by failing to provide Plaintiff and class members with required wage notices and statements.  *See* Id.  Defendants filed Answers to Plaintiff's Amended Complaint on April 9, 2012.  *See* Id. ¶ 12.

On March 21, 2012, the parties requested a briefing schedule for Plaintiff's 216(b) motion, which was granted by the Court. *See Id.* ¶ 10. In preparation for Plaintiff's contemplated 216(b) motion, Plaintiff's counsel interviewed Plaintiff, opt-in Plaintiffs and numerous class members, obtained supporting declarations, and conducted extensive legal research regarding the specific nature of Defendants' FLSA violations. *See Id.* ¶ 11. Plaintiff's counsel also obtained numerous documents from Plaintiff and class members regarding Defendants' time keeping and compensation policies, and Defendants' production requirements. *See Id.* On May 4, 2012, prior to Plaintiff filing her preliminary certification motion, the parties agreed to participate in a mediation in an effort to resolve the action on a class-wide basis. *See Id.* ¶ 13. As a result, the parties jointly requested that the Court suspend the briefing schedule for Plaintiff's 216(b) motion for 120 days. *See Id.* This request was granted by the Court on May 7, 2012. *See Id.*

## IV.    DISCOVERY AND MEDIATION

On July 17, 2012, the Court endorsed the parties' stipulation, whereby it was agreed that: a mediation would be scheduled with Ruth Raisfeld; the statute of limitations would be tolled with respect to potential opt-in plaintiffs' FLSA claims; and Defendants would provide discovery regarding all class members. *See Id.* ¶ 14. Thereafter, in order to determine the proper scope of the case, discovery related to all putative class members' dates of employment and wages was produced for inspection by Defendants. *See Id.* ¶ 15. Defendants also produced documents concerning applicable company policies, including, but not limited to, compensation, time keeping, and production requirements. *See Id.* Additionally, Plaintiff's counsel continued to meet with the named Plaintiff, opt-in Plaintiffs and class members regarding their job duties and work hours, as well as Fidelis' production requirements, time keeping practices, compensation policies, and Defendants' discovery production. *See Id.* ¶ 16. Plaintiff's counsel also continued to receive and review substantial

discovery from class members concerning Defendants' policies and practices. *See* Id. After reviewing, analyzing, and digesting all of the documents produced by Plaintiff, class members and Defendants, Plaintiff's counsel was able to prepare a comprehensive damages analysis for all potential class members, and evaluate the strengths and weaknesses of Plaintiff's claims. *See* Id. ¶ 17.

On December 10, 2012, the parties participated in a mediation with Ruth Raisfeld, an experienced employment law mediator. *See* Id. ¶ 18. At the mediation, Defendants argued that, pursuant to the Supreme Court's holding in *Christopher v. Smithkline Beecham Corporation*, 132 S.Ct. 2156 (2012), class members qualified as outside salespeople exempt from the FLSA's overtime requirements. *See* Id. Defendants also asserted that class members did not work the long hours they claimed to have worked, and that, even if class members did work in excess of 40 hours per week, Defendants had no actual or constructive knowledge of class members working these hours. *See* Id. In that regard, Defendants argued that class members were responsible for submitting their own timesheets certifying that the hours they worked were accurate, and that Fidelis' written policy was to compensate class members for all hours worked, including overtime. *See* Id. Defendants also strongly contended that the case would not be certified as a class action, as individual questions concerning each class member's weekly work hours and time reporting would predominate. *See* Id.

Even though a settlement was not reached at the mediation, the parties continued to engage in an open dialogue in an effort to resolve the case. *See* Id. ¶ 19. In addition, the mediation allowed the parties to better assess the strengths and weaknesses of their case, and helped developed a framework for ongoing settlement negotiations. *See* Id.

## V. CONTINUED SETTLEMENT DISCUSSIONS

Following the mediation, the parties continued to work with the mediator to attempt to negotiate the terms of a class-wide settlement. *See* Id. ¶ 20. Additionally, Plaintiff's counsel continued to meet and confer with Plaintiff and class members regarding the claims, and to obtain

additional discovery. *See* Id. ¶ 21. Consequently, on or around December 31, 2012, following months of negotiation, the parties reached an agreement in principle to settle the case on a class-wide basis. *See* Id. ¶ 22. On March 1, 2013, the parties informed the Court that, while a final resolution had not yet been reached, they had exchanged draft versions of a settlement agreement. *See* Id. ¶ 23. Shortly thereafter, on May 20, 2013, a Settlement Agreement and Release ("Settlement Agreement"), which provides for $700,000, was fully executed by all parties. *See* Id. ¶ 24.

<u>**SUMMARY OF THE SETTLEMENT TERMS**</u>

**I.     THE SETTLEMENT FUND**

The Settlement Agreement creates a maximum Gross Settlement Amount ("GSA") of $700,000. *See* **Ex. A**, Settlement Agreement ¶¶ 1.19, 3.1(A). The GSA covers attorneys' fees and costs, class members' awards, and the service payment to Plaintiff. *See* Id. If no party seeks a rehearing, reconsideration, or appeal of the Court's Final Order and Judgment, Defendants shall deposit the portion of the GSA that has been claimed by class members in an account established by the claims administrator (the "Qualified Settlement Fund" or "QSF") 10 days after the Court has entered the Final Approval Order and Judgment as provided in the Settlement Agreement (the "Final Effective Date"). *See* Id. ¶ 1.15, 3.1(B). Thereafter, the claims administrator will distribute the QSF 15 days after the Final Effective Date, after the Court has issued its Order Granting Final Approval, the Court has ruled on all motions for the award of a service payment to Plaintiff and attorneys' fees and costs, and the Settlement Agreement has become final. *See* Id. ¶ 2.10. Any amounts remaining in the QSF one calendar year after the mailing of the settlement checks will revert to Fidelis. *See* Id. ¶ 3.1(C).

**II.    RELEASE**

The Settlement Agreement provides that each class member who does not timely opt-out pursuant to the Agreement will forever and fully release Defendants from all wage and hour claims that could have been asserted under federal or state law for the period November 3, 2005

- 5 -

through the date of Preliminary Approval, excluding claims under the FLSA. *See* Id. ¶¶ 1.17; 5.1(A). Each individual class member who files a claim form will also forever and fully release Defendants from all wage and hour claims that could have been asserted under federal or state law in the Litigation for the period November 3, 2005 through the date of Preliminary Approval, including under the FLSA and the NYLL. *See* Id. ¶¶ 1.18; 5.1(B). Additionally, all class members will irrevocably and unconditionally release any claims against Defendants for attorneys' fees or costs associated with class counsel's representation. *See* Id. ¶ 5.1(C).

## III.   ELIGIBLE EMPLOYEES

The Rule 23 Class consists of the Named Plaintiff and current and former employees of Fidelis who performed work as a RFR from November 3, 2005 to April 1, 2013. *See* Id. ¶ 1.6.

## IV.   ALLOCATION FORMULA

Each class member who returns a claim form will receive a proportional share of the Fund based on the number of workweeks worked during the class period. Specifically, the Settlement Agreement states that each class members' net settlement payment will be computed as follows: (1) divide the number of workweeks worked by each Plaintiff in the Class Period as reflected in the confidential document exchanged with Plaintiffs' Counsel, by the total number of workweeks worked by all Plaintiffs in the Class Period, to determine each Plaintiff's percentage share of the Settlement Amount after attorneys' fees and service payments have been deducted ("Funds Available to the Class"); (2) multiply each Participating Class Member's percentage share times the Funds Available to the Class to compute the Participating Class Member's "Individual Settlement Benefit." *See* Id. ¶ 3.4.

## V.   ATTORNEYS' FEES AND LITIGATION COSTS

Plaintiff's counsel will apply for 33.3% of the GSA ($233,333.34) as attorneys' fees.[2] *See* Id.

---

[2]     This is a typical fee award in the Second Circuit. *See e.g., Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (finding class counsel's request for one-third of the settlement fund "reasonable and

¶ 3.2(A).  Plaintiff's counsel will also seek reimbursement of reasonable litigation costs and expenses from the Fund, not to exceed $5,000.  *See* Id.  The Court need not rule on fees and costs now. Plaintiff's counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h) & 54(d)(2).  The Settlement Agreement is not conditioned on the award of attorneys' fees, and explicitly states that such award should be considered separately.  *See* **Ex. A**, Settlement Agreement ¶ 3.2(B).

<u>**CLASS ACTION SETTLEMENT PROCEDURE**</u>

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

2.  Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  With this motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, appointing Plaintiff's counsel as class counsel, and approving the proposed Settlement Notice and authorizing the claims administrator to send it.

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

---

'consistent with the norms of class litigation in this circuit'") (*citing Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

1.      Within 10 days of the filing of the Preliminary Approval Order, class counsel or Defendants' counsel will provide the claims administrator with a list, in electronic form, of the names and last known addresses of each class member.  *See* **Ex. A**, Settlement Agreement ¶ 2.6(A).

2.      The claims administrator will mail the Settlement Notice, with claim form, to class members within 20 days after the Order Granting Preliminary Approval.  *See* Id. ¶ 2.4.

3.      Class members will have 60 days after the date the Settlement Notice is mailed to return the claim form, opt-out of, or object to the Settlement.  *See* Id. ¶¶ 1.3, 2.6(B), 2.7(B), 2.8(A).

4.      Plaintiff will file a Motion for Final Approval of Settlement no later than 14 calendar days before the fairness hearing.

5.      After the fairness hearing, if the Court grants Plaintiff's Motion for Final Approval of the Settlement, the Court will issue an Order Granting Final Approval.  *See* Id. ¶ 2.9.  The Final Effective Date of the settlement will be the first date after the Court has entered a Final Approval Order and Judgment as provided in the Settlement Agreement.  *See* Id. ¶¶ 1.15, 2.9.

6.      Defendants shall fund the QSF – in an amount equal to the amount of the GSA that has been claimed by class members as a result of the filing of timely claim forms – 10 days after the Final Effective Date.  *See* Id. ¶ 3.1(B).

7.      The claims administrator will disburse settlement checks to class members 15 days after the Final Effective Date.  *See* Id. ¶ 2.10.

## ARGUMENT

## I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (*quoting In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the

courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) (citation omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *see Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *see also Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 2458172, at *1 (S.D.N.Y. June 28, 2012) (granting preliminary approval where the "proposed Settlement Agreement [was] within the range of possible settlement approval, such that notice to the Class [was] appropriate").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (*quoting Manual for Complex Litigation (Third)* § 30.42 (1995)) (internal quotation marks omitted); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 1890381, at *1 (S.D.N.Y. Mar. 12, 2012) (granting preliminary

approval where settlement was "the result of extensive, arm's length negotiations by counsel well-versed in the prosecution and defense of wage and hour class and collective actions"). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240 (CM) *et al*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

This first step in the settlement process simply allows notice to issue to the class and for class members to object to or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of class members' input. *Yuzary*, 2013 WL 1832181, at *1.

### A.     The Settlement Is Fair, Reasonable, And Adequate.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1.  <u>Litigation Through Trial Would Be Complex, Costly, And Long</u>
    (<u>*Grinnell* Factor 1).</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with approximately 90 putative class members with fact-intensive claims under both federal and state law.

Although there has been significant discovery, additional discovery would be required to establish liability and damages, including depositions of Plaintiff, class members, Defendants, and Defendants' managers. A fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

2.  <u>The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2).</u>

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Here, the named Plaintiff has expressed her approval of the settlement terms by signing the Settlement Agreement. After notice issues and class members have had an opportunity to weigh in, the Court can more fully analyze this factor.

3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement.  The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (*quoting In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted); *see also Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the court the opportunity to " 'intelligently [ ] make ... an appraisal' of the Settlement.") (internal citations and quotations omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (*quoting Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted).  The parties' discovery here meets this standard.

As discussed above, Plaintiff obtained substantial amounts of data related to class members' dates of employment and wages, and to Defendants' time keeping, compensation, and production requirement policies.  *See* Schaffer Decl. ¶¶ 11, 15, 16, 21.  This allowed Plaintiff's counsel to perform detailed damages calculations based on the data that Plaintiff, class members, and Defendants provided.  *See* Id. ¶ 17.  Furthermore, the parties participated in a mediation with Ruth Raisfeld, an experienced employment law mediator, and engaged in many months of litigation and negotiation.  *See* Id. ¶¶ 18, 20, 22.

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the

- 12 -

identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *Yuzary*, 2013 WL 1832181, at *2 ("The assistance of an experienced … employment mediator … reinforces that the Settlement Agreement is non-collusive."); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2013 WL 1828598, at *1 (S.D.N.Y. Apr. 30, 2013) ("A settlement … reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process.") (internal quotation marks and citation omitted); *see also Odom*, 275 F.R.D. at 411(finding that, "although this case is still in the relatively early stages of litigation, the discovery conducted to date has been sufficient" to establish damages where "the parties engaged in discovery to identify potential class members, the hours that they worked," and "class counsel compared the time and pay records that the named plaintiffs provided with records maintained by [the defendant]"). This factor also weighs in favor of preliminary approval.

### 4. Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiff's case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (*quoting Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted).

Given the fact-intensive nature of Plaintiff's off-the-clock claims, a trial on the merits would involve significant risk as to both liability and damages. For instance, Plaintiff may have difficulty establishing that, following the Supreme Court's decision in *Christopher v. Smithkline Beecham Corporation*, RFRs were not exempt outside sales people. *See* 132 S.Ct. 2156. Plaintiff may also have difficulty proving the number of hours she worked each week, and that Defendants had actual and/or constructive knowledge of these hours, especially considering that Plaintiff was responsible for reporting her own hour, and Defendants' written policy was to pay Plaintiff for all hours worked. These inquiries would require extensive testimony and discovery regarding Defendants' time keeping and compensation practices, as well as Defendants' production requirements. While Plaintiff believes that she could ultimately establish Defendants' liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor therefore weighs in favor of preliminary approval.

5.    Establishing A Class And Maintaining It Through Trial Would Not
      Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. Defendants indicated their intent to oppose conditional certification of the FLSA collective, and, in the event Plaintiff obtained preliminary certification, Defendants would likely move for decertification of the collective after the conclusion of discovery, both requiring briefing by the parties. Furthermore, the Court has not yet certified the class under Rule 23, and such a determination would likely be reached only after another round of extensive briefing. If a class is certified, Defendants would likely seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors preliminary approval.

6.      Defendants' Ability To Withstand A Greater Judgment Is Not
        Assured (*Grinnell* Factor 7).

It is unclear whether Defendants would be able to withstand a greater judgment.  Even if

Defendants could afford to pay more, a "defendant's ability to withstand a greater judgment,

standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (*quoting

In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation

omitted)).  Here, the Settlement Agreement eliminates the risk of collection by requiring Defendants

to fund the QSF within 10 days of the Final Effective Date of the Settlement.  *See* **Ex. A**, Settlement

Agreement ¶ 3.1(B).  Accordingly, this factor also favors preliminary approval.

7.      The Settlement Fund Is Substantial In Light Of The Possible Recovery
        And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9).

The $700,000 settlement amount represents a good value given the attendant risks of

litigation and the potential collection risks discussed above, even though the recovery could be

greater if Plaintiff succeeded on all claims at trial and survived an appeal.  Based on the class size of

approximately 90 individuals, the $700,000 GSA will result in an average award of $8,000 before

fees and costs, with each class member receiving a proportional payment based upon the number of

weeks worked at Fidelis.  Id. ¶ 3.4.  In Plaintiff's counsel's estimation, the settlement easily falls

within the range of reasonableness because it achieves a significant benefit for Plaintiff and class

members in the face of significant obstacles.  Schaffer Decl. ¶ 25, 26.  It also represents a significant

percentage of the recovery that Plaintiff would have achieved had she prevailed on all of her claims

and survived an appeal, and a substantial portion of what Defendants would be able to pay if faced

with a judgment.  *See* Id. ¶ 27.

Weighing the benefits of the settlement against the risks associated with proceeding in

the litigation, the settlement amount is more than reasonable.  "[T]here is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam,* 2008 WL 782596, at *5 (*quoting Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

## II.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE.

Plaintiff respectfully requests that the Court conditionally certify the following Federal Rule of Civil Procedure 23 class for settlement purposes:

> Named Plaintiff and current and former employees of Fidelis who performed work as a RFR from November 3, 2005 to April 1, 2013.

The proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), and

Defendants do not oppose conditional certification for settlement purposes. *See* 4 *Newberg* §
11.27 ("When the court has not yet entered a formal order determining that the action may be
maintained as a class action, the parties may stipulate that it be maintained as a class action for the
purpose of settlement only.") Conditional settlement approval, class certification, and appointment
of class counsel have practical purposes, including avoiding the costs of litigating class status while
facilitating a global settlement, ensuring that all class members are notified of the terms of the
proposed settlement, and setting the date and time of the final approval hearing. *See In re Gen.
Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784, 791 (3d Cir. 1995).

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is
impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses
of the representative parties are typical of the claims or defenses of the class; and (4) the
representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P.
23(a). Rule 23(b)(3) requires the court to find that (1) questions of law or fact common to the
members of the class predominate over any questions affecting only individual members, and that
(2) a class action is superior to other available methods for the fair and efficient adjudication of the
controversy. Fed. R. Civ. P. 23(b)(3). "In the Second Circuit, 'Rule 23 is given liberal rather than
restrictive construction, and courts are to adopt a standard of flexibility'" in evaluating class
certification. *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC)(AJP), 2013 WL
1040052, at *10 (S.D.N.Y. Mar. 15, 2013) (*quoting Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d
Cir. 1997)). Moreover, "it seems beyond peradventure that the Second Circuit's general
preference is for granting rather than denying class certification." *Gortat v. Capala Bros., Inc.*, 257
F.R.D. 353, 361 (E.D.N.Y. 2009) (citations and internal quotation marks omitted).

## A.    <u>Numerosity</u>

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed where a putative class has forty or more members.  *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).  Plaintiff easily satisfies the numerosity requirement – there are approximately 90 class members.  Schaffer Decl. ¶ 25.

> ### B.   <u>Commonality</u>

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The commonality requirement is satisfied where the injuries complained of by the plaintiffs allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *See Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001); *see also Marisol A.*, 126 F.3d at 376-77.  Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181.  There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Nevertheless, courts construe the commonality requirement liberally, and generally hold that a single question of law or of fact will suffice. *See, e.g., Marisol A.*, 126 F.3d at 376; *Spencer*, 2013 WL 1040052, at *14 (stating that commonality is satisfied "if the class shares a single common question of law or fact") (citations omitted).

This case involves several common factual and legal issues, including whether Defendants: (1) enforced a de facto company-wide policy to require class members to report 37.5 hours on their weekly timesheets, regardless of the hours they worked; (2) failed to accurately monitor and record the hours class members worked; and (3) failed to compensate class members with proper overtime compensation and gap-time wages when they worked in excess of 40 hours per week.  These

alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *See, e.g., Id.* at *15 (commonality satisfied where defendant's company policy was not to pay overtime).

### C.   Typicality

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (*quoting In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Rather, the claims of the named plaintiff and the class "only need to share the same essential characteristics, and need not be identical." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citation omitted).

Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of class members' claims, namely, that Plaintiff and class members were not paid overtime compensation and gap time wages when they worked in excess of 40 hours per week. *See Spencer*, 2013 WL 1040052, at *18 (finding typicality where "all class members' claim arises from the same course of events, namely, [defendant'] policies and practices of permitting [class members] to work overtime but denying them overtime premium wages.").

### D.   Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that

the named representatives will have an interest in vigorously pursuing the claims of the class, and

… have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking*

*Sys. of N.Y.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(*quoting Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation

marks omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a

party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659 (DLI)(MDG),

2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (*quoting Martens*, 181 F.R.D. at 259).

Given that there is no evidence that Plaintiff's and class members' interests are at odds, the

adequacy requirement is met.  *See O'Dell v. AMF Bowling Ctrs., Inc.*, No. 09 Civ. 759 (DLC), 2009

WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009) (finding that the plaintiffs satisfied Fed. R. Civ. P.

23(a)(4) "because Plaintiffs' interests [were] not antagonistic or at odds with class members").

**E.     Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any

questions affecting only individual members and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This

inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by

representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

1.     Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole … predominate over those issues that are subject

only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136

(2d Cir. 2001) (internal quotation marks omitted).  The essential inquiry is whether "liability can

be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.*

at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the

- 20 -

predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  Moreover, courts have found that a plaintiff's satisfaction of the typicality requirement of Rule 23(a) is perhaps the best indicator that Rule 23(b)(3) has been satisfied.  *See, e.g., Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (stating that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement").

Here, all members of the class are unified by common factual allegations – that all class members were subjected to the same unlawful time keeping and compensation policies.  They are also unified by a common legal theory – that these policies violated the NYLL.  These common issues predominate over any issues affecting only individual class members.  *See Spencer*, 2013 WL 1040052, at *25 (finding that common issues predominate over individual issues in action to recover overtime compensation).  The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance.  *See Frank*, 228 F.R.D. at 183 (collecting cases).  Plaintiff therefore satisfies Rule 23(b)(3).

### 2.      A Class Action Is A Superior Mechanism.

Rule 23(b)(3)'s second part analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Courts routinely find superiority where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery.  *See e.g., Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of

individual adjudication due to the amount at issue); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS), 2005 WL 106895, at *5 (S.D.N.Y. Jan. 19, 2005) (ruling that a class action is superior where individual potential class members claims are small and, as a result, there is little incentive for the putative class members to bring individual suits).

"Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually."  *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216, at *3 (S.D.N.Y. Dec. 13, 2011) (citations omitted).  Here, Plaintiff and class members have limited financial resources with which to prosecute individual actions.  Thus, employing the class device will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Matheson*, 2011 WL 6268216, at *3 (finding that class adjudication would "conserve judicial resources and is more efficient for class members" in wage and hour case).

## III.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Fitapelli & Schaffer, LLP ("F&S") should be appointed as Class Counsel.  Rule 23(g), which governs the appointment of class counsel for a certified class, sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

F&S meets all relevant criteria.  Plaintiff's counsel did substantial work identifying,

investigating, prosecuting, and settling the claims; has substantial experience prosecuting and settling wage and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class.  *See* Schaffer Decl., generally.  Courts have found F&S to be adequate class counsel in wage and hour class and collective actions.  *See, e.g., Yuzari*, 2013 WL 1832181, at *5 ("F&S is experienced in representing workers in wage and hour class actions and has served as lead counsel in numerous wage and hour class and collective actions…"); *Ryan v. Volume Services America, Inc.*, No. 652970/2012 (MLS), 2012 N.Y. Misc. LEXIS 932 (N.Y.Sup.Ct. Mar. 7, 2013) ("F&S are experienced employment attorneys with a good reputation among the employment law bar.  The firm has recovered millions of dollars for thousands of employees."); *Girault*, 2012 WL 2458172, at *2 (stating that F&S has "years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Lovaglio*, 2012 WL 1890381, at *2 (appointing F&S as class counsel because they "did substantial work identifying, investigating, and settling Plaintiffs' and the class members' claims"); *Matheson*, 2011 WL 6268216, at *3 (appointing F&S as class counsel based on their "substantial experience prosecuting and settling employment class actions, including wage and hour class actions"); *O'Dell*, 2009 WL 6583142, at *2 (appointing F&S as class counsel and finding them to be "experienced and well-qualified employment lawyers and class action lawyers" with "particular expertise in prosecuting and settling wage and hour class actions"); *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561 (S.D.N.Y. 2012) (granting plaintiffs' motion for collective action certification); *Karic v. Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011) (same).

## IV.    THE PROPOSED CLASS NOTICE IS APPROPRIATE.

The content of the proposed Settlement Notice, which is attached to the Schaffer Decl. as **Ex. B**, fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule

23(c)(2)(B), the notice must provide:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Settlement Notice satisfies each of these requirements.  It also explains the allocation formula, the basis on which each class member's award was determined, and the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to file a claim form, object to, or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).  Courts in this district have approved class notices that are very similar to the one proposed by Plaintiff. *See, e.g., Girault*, 2012 WL 2458172, at *3; *Lovaglio*, 2012 WL 1890381, at *3; *Matheson*, 2011 WL 6268216, at *6-7; *O'Dell*, 2009 WL 6583142, at *3.

The Settlement Agreement provides that the claims administrator will mail the Settlement Notice to the last known address of each class member within 20 days of the entry of the Preliminary Approval Order by the Court.  *See* **Ex. A**, Settlement Agreement ¶ 2.4.  The claims administrator will take all reasonable steps to obtain the correct address of any class members for whom notices are returned as undeliverable.  *See* Id.  Class members will have 60 days to file a claim form, opt out of, or object to the settlement.  Id. ¶¶ 2.6(B), 2.7(B), 2.8(A).

## V.     PLAINTIFF WILL SEEK APPROVAL OF THE FLSA SETTLEMENT.

Plaintiff will seek approval of the settlement of the FLSA claims separately from the Rule 23 claims.  FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under Rule 23.  *Ansoumana v.*

*Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").  Because under the FLSA "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").  Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement.  When Plaintiff files her Motion for Final Approval of the Settlement, she will seek approval of the FLSA settlement.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's counsel as class counsel, approve the Settlement Notice, and enter the Proposed Order.

Dated: New York, New York
        May 21, 2013

- 25 -

Respectfully submitted,

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the putative class*